**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CJH ENTERPRISES LLC d/b/a LUCKY'S LEASH, | Civil Action No. 20-CV-15067 |
| Plaintiff, | |
| v. | **DEFENDANT TEKNO PRODUCTS INC.'S ANSWER WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** |
| TEKNO PRODUCTS INC. and JEFF KURANI, individually, | |
| Defendants. | |

Defendant Tekno Products Inc. ("Tekno" or "Defendant"), by and through its undersigned counsel, hereby answers CJH Enterprises LLC d/b/a Lucky's Leash ("CJH" or "Plaintiff") Complaint (the "Complaint") as follows:

## NATURE OF THE CLAIM

1.      The allegations contained in Paragraph 1 of the Complaint constitute legal conclusions to which no response is required.  To the extent Paragraph 1 of the Complaint includes factual allegations, Defendant lacks knowledge or information sufficient to form a belief as to same and accordingly denies the same.

2.      Defendant admits there exists a written contract between Tekno and CJH that was executed on or about October 4, 2017 (the "LL Agreement").   The language of the LL Agreement speaks for itself and Defendant refers all questions of interpretation and law to the Court.

3.      Defendant denies the allegation of Paragraph 3 of the Complaint.

## JURISDICTION AND VENUE

4.     The allegations contained in Paragraph 4 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies the allegations contained in Paragraph 4.

5.     The allegations contained in Paragraph 5 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies the allegations contained in Paragraph 5.

6.     Defendant admits that Tekno's principal place of business is located in New Jersey, but lacks knowledge and information sufficient to form a belief as to the remaining factual allegations contained in Paragraph 6, and accordingly denies same.

## THE PARTIES

7.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 7 of the Complaint and accordingly denies the same.

8.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 8 of the Complaint and accordingly denies the same.

9.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 9 of the Complaint and accordingly denies the same.

10.     Defendant admits the allegations of Paragraph 10 of the Complaint.

11.     Defendant admits the allegations of Paragraph 11 of the Complaint.

12.     Defendant admits that Jeff Kurani is an officer of Tekno, but specifically denies the allegation that Kurani has "total and unfettered control over Tekno." Defendant lacks knowledge and information sufficient to form a belief as to the remaining factual allegations of Paragraph 12 of the Complaint, and accordingly denies same.

## FACTUAL ALLEGATIONS

13.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 13 of the Complaint and accordingly denies the same.

14.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 14 of the Complaint and accordingly denies the same.

15.     Defendant admits that U.S. Registration No. 4,965,842 was issued by the United States Patent and Trademark Office, and refers to that registration for its contents.

16.     Defendant admits that Tekno and CJH entered into the LL Agreement on or about October 4, 2017.   The language of the LL Agreement speaks for itself and Defendant refers all questions of interpretation and law of Paragraph 16 of the Complaint to the Court.

17.     The language of the LL Agreement speaks for itself and Defendant refers all questions of interpretation and law of Paragraph 17 of the Complaint to the Court.

18.     Defendant denies the allegations of Paragraph 18 of the Complaint.

19.     Defendant denies the allegations of Paragraph 19 of the Complaint.

20.     Defendant denies the allegations of Paragraph 20 of the Complaint.

21.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 21 of the Complaint and accordingly denies the same.

22.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 22 of the Complaint and accordingly denies the same.

23.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 23 of the Complaint and accordingly denies the same.

24.     The language of the LL Agreement speaks for itself and Defendant refers all questions of interpretation and law of Paragraph 24 of the Complaint to the Court.

25.     Defendant denies the allegations of Paragraph 25 of the Complaint.

26.     Defendant admits that Tekno marketed and sold LUCKY LEASH product after October 4, 2018 to the extent it was permitted to do by Section 10 of the LL Agreement.

27.     Defendant denies the allegations of Paragraph 27 of the Complaint and refers all questions of contractual interpretation and law to the Court.

28.     Defendant admits that LUCKY LEASH product product manufactured by Defendant prior to the expiration or termination of the LL Agreement remains available for sale.

29.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 29 of the Complaint and accordingly denies the same.

30.     Defendant admits that Paragraph 30 of the Complaint restates a portion of the letter attached as Exhibit C to the Complaint, but denies knowledge or information sufficient to form a belief as to the authenticity of the letter or whether such letter was ever mailed or delivered.

31.     Defendant denies the allegations of Paragraph 31 of the Complaint and refers all questions of contractual interpretation and law to the Court.

## ANSWER TO PLAINTIFF'S FIRST CAUSE OF ACTION
### (Trademark Infringement)

32.     Defendant incorporates by reference and realleges its responses in paragraphs 1-31 above as if fully stated herein.

33.     Defendant denies the allegations of Paragraph 33 of the Complaint and refers all questions of contractual interpretation and law to the Court.

34.     Defendant denies the allegations of Paragraph 34 of the Complaint.

35.     Defendant denies the allegations of Paragraph 35 of the Complaint and refers all questions of contractual interpretation and law to the Court.

36.     Defendant denies the allegations of Paragraph 36 of the Complaint.

4

37.     Defendant denies the allegations of Paragraph 37 of the Complaint and refers all questions of contractual interpretation and law to the Court.

### ANSWER TO PLAINTIFF'S SECOND CAUSE OF ACTION
#### (False Advertising)

38.     Defendant incorporates by reference and realleges its responses in paragraphs 1-37 above as if fully stated herein.

39.     Defendant denies the allegations of Paragraph 39 of the Complaint.

40.     Defendant denies the allegations of Paragraph 40 of the Complaint.

41.     Defendant denies the allegations of Paragraph 41 of the Complaint.

42.     The allegations contained in Paragraph 42 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies the allegations contained in Paragraph 42.

43.     Defendant denies the allegations of Paragraph 43 of the Complaint.

44.     Defendant denies the allegations of Paragraph 44 of the Complaint.

45.     The allegations contained in Paragraph 45 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies the allegations contained in Paragraph 45.

### ANSWER TO PLAINTIFF'S THIRD CAUSE OF ACTION
#### (Breach of Contract)

46.     Defendant incorporates by reference and realleges the responses in Paragraphs 1-45 above as if fully stated herein.

47.     The language of the LL Agreement speaks for itself and Defendant refers all questions of interpretation and law of Paragraph 47 of the Complaint to the Court.

48.     The language of the LL Agreement speaks for itself and Defendant refers all questions of interpretation and law of Paragraph 48 of the Complaint to the Court.

49.     Defendant lacks knowledge or information sufficient to form a belief as to the whether or not the LL Agreement was extended, and accordingly denies Plaintiff allegation that it was not.  The language of the LL Agreement speaks for itself and Defendant refers all questions of interpretation and law of Paragraph 49 of the Complaint to the Court.

50.     Defendant admits that it has continued to sell and market LUCKY LEASH product since October 4, 2018, to the extent permitted to do so under Section 10 of the LL Agreement. Defendant denies the remaining allegations of Paragraph 50 of the Complaint.

51.     Defendant denies the allegations of Paragraph 51 of the Complaint.

52.     Defendant denies the allegations of Paragraph 52 of the Complaint.

## ANSWER TO PLAINTIFF'S FOURTH CAUSE OF ACTION
### (Unfair Competition)

53.     Defendant incorporates by reference and realleges the responses in Paragraphs 1-52 above as if fully stated herein.

54.     Defendant denies the allegations of Paragraph 54 of the Complaint.

55.     Defendant denies the allegations of Paragraph 55 of the Complaint.

56.     The allegations contained in Paragraph 56 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies the allegations contained in Paragraph 56.

57.     Defendant denies the allegations of Paragraph 57 of the Complaint.

## ANSWER TO PLAINTIFF'S FIFTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

58.     Defendant incorporates by reference and realleges the responses in Paragraphs 1-57 above as if fully stated herein.

59.     Defendant denies the allegations of Paragraph 59 of the Complaint.

60.     Defendant denies the allegations of Paragraph 60 of the Complaint.

61.     Defendant denies the allegations of Paragraph 61 of the Complaint.

## ANSWER TO PLAINTIFF'S SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

62.     Defendant incorporates by reference and realleges the responses in Paragraphs 1-61 above as if fully stated herein

63.     Defendant denies the allegations of Paragraph 63 of the Complaint.   For clarification, Tekno has continued to sell and market LUCKY LEASH product *with* authorization.

64.     Defendant denies the allegations of Paragraph 64 of the Complaint.  The language of the LL Agreement speaks for itself and Defendant refers all questions of interpretation and law of Paragraph 64 of the Complaint to the Court.

65.     The allegations contained in Paragraph 65 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies the allegations contained in Paragraph 65.

66.     Defendant denies the allegations of Paragraph 66 of the Complaint.

## ANSWER TO PLAINTIFF'S SIXTH CAUSE OF ACTION
### (Accounting)

67.     Defendant incorporates by reference and realleges the responses in Paragraphs 1-66 above as if fully stated herein.

68.     Defendant denies that Plaintiff is entitled to any profits generated by Defendants except as provided under the LL Agreement – the LL Agreement speaks for itself and Defendant refers all questions of interpretation and law of Paragraph 68 of the Complaint to the Court.

69.     Defendant denies the allegations of Paragraph 60.

## AFFIRMATIVE DEFENSES

1.     Subject to and without waiver of the denials and responses contained in its Answer, Tekno alleges as follows as its affirmative defenses directed to the Complaint. In asserting these defenses, Tekno does not assume the burden of proof as to matters that, pursuant to law, are Plaintiff's burden to prove.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

2.     The Complaint fails to state a claim against Defendant upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (License / Acquiescence / Estoppel)

3.     All acts performed by or on behalf of Defendant alleged by Plaintiff to constitute trademark infringement were authorized under the LL Agreement or otherwise performed with Plaintiff's express permission or acquiescence.

4.     The LL Agreement gave Defendant an exclusive license to exploit the LUCKY LEASH trademark, including but not limited to the continued right to market and sell all LUCKY LEASH product then existing and in Defendants' possession or in the process of being manufactured by Defendant at the time that the LL Agreement expired or terminated.

5.     At all relevant times, Tekno has acted in accordance with the LL Agreement.

8

6.     Having endorsed the LL Agreement, Plaintiff must be estopped from alleging infringement based on actions taken by Defendants pursuant to the LL Agreement.

### THIRD AFFIRMATIVE DEFENSE
### (No Breach of Contract)

7.     Defendant, at all relevant times, faithfully performed its obligations under the LL Agreement, including but not limited to all payment obligations.

8.     Any perceived failure of Plaintiff to receive compensation is and was the result of third party forces beyond Defendant's control such as Plaintiff's poor product design and unfavorable market forces.

### FOURTH AFFIRMATIVE DEFENSE
### (No Unfair Competition)

9.     Defendant's products at issue have not and do not unfairly compete with Plaintiff.

10.     Upon information and belief, Plaintiff does not independently produce or manufacture any products that compete with Defendant's products.

11.     To the extent Plaintiff markets and sells any products in competition with Defendant, such competition is fair as it is authorized under the LL Agreement.

### FOURTH AFFIRMATIVE DEFENSE
### (No Unjust Enrichment)

12.     The LL Agreement addresses or governs each of Plaintiff's claims.

13.     The existence of a signed, written agreement between the parties precludes any "quasi-contractual" claims such as unjust enrichment.

14.     Any profits inuring to Defendant's benefit were bargained for at arm's length vis-à-vis the LL Agreement and are therefore presumptively fair and just.

## SIXTH AFFIRMATIVE DEFENSE
### (Plaintiff's Claimed Trademark Lacks Secondary Meaning)

15.     The mark LUCKY LEASH as used in connection with dog collars and leashes, including the mark covered by Registration No. No. 4,965,842, is not inherently distinctive, lacks secondary meaning, and has not become distinctive in that purchasers do not associate the mark "LUCKY LEASH" on dog collars and leashes with Plaintiff.

16.     The mark LUCKY LEASH as used in connection with dog collars and leashes, including the mark covered by Registration No. 4,965,842, is at best descriptive in that "Lucky" is primarily a personal name commonly assigned to domesticated dogs and "leash" is a generic term for a rope, cord or tether used to restrain a domesticated dog.

17.     Consumers primarily associate the word "Lucky," as a personal name, and particularly one commonly assigned to domesticated dogs.  For example, Lucky is the name of the secondary protagonist and canine sidekick to Dr. Doolittle in the successful 1998-2009 film series of the same name, and is also the name of a famous Maltese (Lucky Diamond) who set the Guinness World Record for most photographed dog with a celebrity.

18.     Because generic marks are never protectable and "Lucky" is primarily perceived as a personal name, particularly one commonly assigned to dogs, "Lucky Leash," as used in connection with the dog collars and leashes cannot act as a trademark in that it has not achieved acquired distinctiveness in the relevant marketplace.

19.     There are a number of third party uses of the word "Lucky" as used in connection with pet supplies and Class 018 goods, including, upon information and belief, in connection with dog collars and leashes.

20.     Consumers have not and still do not recognize the mark "Lucky's Leash" as used in connection with dog collars and leashes by Plaintiff to function as a source identifier.

## SEVENTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

21.     Plaintiff must be estopped from asserting any and all claims arising out of Defendants' manufacture, marketing and sale of Lucky's Leash products due to Plaintiff's own unclean hands.

22.     Plaintiff has unclean hands in that Plaintiff misrepresented the quality of its Lucky's Leash design.

23.     Plaintiff has unclean hands in that Plaintiff misrepresented the marketability of Lucky's Leash brand products.

24.     Plaintiff has unclean hands in that Plaintiff misrepresented the value and marketability of the Lucky's Leash brand.

25.     Upon information and belief, Plaintiff breached the LL Agreement, including but not limited to express and implied warranties thereunder, before any of the actions or omissions allegedly made by Defendant in breach of the LL Agreement.

## EIGHTH AFFIRMATIVE DEFENSE
### (Abandonment of Trademark Rights)

26.     Plaintiff has abandoned its rights and interest in the LUCKY'S LEASH trademark, including Registration No. 4,965,842, as it has not and does not use the LUCKY'S LEASH mark in commerce in the United States.

27.     Upon information and belief, Plaintiff does not actively manufacture, market or sell any goods, including dog collars and leashes, under the LUCKY'S LEASH mark.

28.     Upon information and belief, Plaintiff never independently manufactured, marketed or sold any goods, including dog collars and leashes, under the LUCKY'S LEASH mark.

29.     Upon information and belief, no goods, including dog collars and leashes, have been marketed or sold under the LUCKY'S LEASH mark by Plaintiff or any third-party licensee of Plaintiff for years.

30.     As of the date of this pleading, Plaintiff's websites available at <www.luckysleash.com> and <www.oneleash.com> are both defunct and inaccessible.

31.     Upon information and belief, Plaintiff controls and maintains or controlled and maintained a Facebook page at <www.facebook.com/LuckysLeash/>, which was primarily used to share images and video clips of dogs, which was never used to market or sell LUCKY'S LEASH brand goods or any other products, and which has not been updated or maintained by anyone since August 2016.

32.     Likewise, upon information and belief, Plaintiff controls and maintains or controlled and maintained an Instagram page at <www.instagram.com/luckysleash/> , which was primarily used to share photographs of pets,  was never used to market or sell LUCKY'S LEASH brand goods or any other products, and which has not been updated or maintained by anyone since September 2018.

33.     Upon information and belief, Plaintiff does not actively manufacture, market or sell any products under the LUCKY'S LEASH mark.

34.     Upon information and belief, Plaintiff has terminated use of the LUCKY'S LEASH mark in connection with the sale and offer for sale of the goods described in Registration No. 4,965,842 within the U.S.

35.     Upon information and belief, Plaintiff has no intention to resume bona fide use of the LUCKY'S LEASH mark in connection with the sale and offer for sale of the goods described in Registration No. 4,965,842 within the U.S.

36.     Upon information and belief, Plaintiff has abandoned Registration No. 4,965,842 with the registered goods within the meaning of 15 U.S.C. § 1127.

### NINTH AFFIRMATIVE DEFENSE
#### (Laches/Acquiescence)

37.     Plaintiff's claims are barred by the doctrine of laches and/or acquiescence as Tekno's sales of Lucky's Leash products have been more-or-less continuous since before the LL Agreement expired, i.e., since before October 2018.

38.     Lucky's Leash products produced and sold by Tekno have been available since before 2018 and Tekno's sale of these products was open, continuous, and obvious for at least two years prior to the filing of this action.

39.     Tekno's sale of the Lucky's Leash products was done with the knowledge and permission of Plaintiff, explicit or implicit, with no attempt by Plaintiff to prevent same.

40.     Upon information and belief, Plaintiff knew that Tekno was still selling Lucky's Leash products as of November 2018, but took no action until August 2020, nearly two years later.

41.     Tekno relied to its detriment upon Plaintiff's acquiescence and delay, has continued to sell Lucky's Leash products in reliance on Plaintiff's inaction and will be injured by Plaintiff's undue delay.

### TENTH AFFIRMATIVE DEFENSE
#### (No Subject Matter Jurisdiction)

42.     Plaintiff's only causes of action arising under federal law – (1) trademark infringement and (2) false advertising – are substantially predominated and preempted by Plaintiff's state- and common-law claims grounded in contract and/or equity.

43.     Plaintiff's state and common-law causes of action are entirely dispositive of Plaintiff's Lanham Act claims in that the question of trademark infringement depends not on likelihood of confusion, but upon the interpretation of the parties' contractual rights.

44.     The strength and validity of Plaintiff's Lanham Act claims depends only upon questions and issues of state law and contractual interpretation.

45.     In other words, Plaintiff's claims are effectively state law contract claims despite being presented as federal Lanham Act claims and there is no federal question before the Court.

Defendant has not knowingly or intentionally waived applicable defenses and Defendant reserves the right to assert additional defenses not stated herein, including such defenses that later become apparent. Defendant further reserves the right to amend this Answer in light of facts or legal theories that become applicable through subsequent disclosures, discovery, procedural issues, or modification of existing statutes and defenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant prays for relief on the Complaint as follows:

1.     That the Court enter judgment in favor of Defendant and against Plaintiff, that Plaintiff take nothing by its Complaint, and that Plaintiff's Complaint be dismissed with prejudice;

2.     That the Court award Defendant its attorneys' fees and costs; and

3.     That the Court grant Defendant such other and further relief as the Court may deem, just and appropriate under the circumstances.

# COUNTERCLAIMS

Counterclaim-Plaintiff Tekno Products Inc. ("Tekno"), by and through its undersigned attorneys, for its Counterclaims against Counterclaim-Defendant CJH Enterprises LLC d/b/a Lucky's Leash ("CJH"), alleges as follows:

# INTRODUCTION

1.      Tekno is a leading innovator, manufacturer and marketer of a variety of consumer products, including a wide-range of "as seen on TV" products and private label products for U.S. retailers.

2.      One such product that is manufactured, marketed and sold by Tekno is a dog restraint system marketed and sold under the brand name LUCKY LEASH ("LUCKY LEASH Product").

3.      The LUCKY LEASH Product was first designed by CJH in or around 2013-14, and thereafter, on or about October 9, 2017, CJH entered into a written contract with Tekno that called for the mass production, marketing and sale of LUCKY LEASH Product by Tekno (the "LL Agreement"). *See* Exhibit B to Complaint (Dkt. No. 5-2).

4.      Due to, *inter alia*, a poor product design by CJH, surpassed by better retractable leash designs of competitors, LUCKY LEASH was a commercial failure, which left Tekno in possession of substantial quantities of difficult-to-sell LUCKY LEASH Product, even after the contractual relationship between Tekno and CJH ended.

5.      Upon information and belief, CJH knew or should have known about flaws in its design of LUCKY LEASH Product before the parties entered into the LL Agreement.

6.      Upon information and belief, but for the flaws in and non-merchantability of LUCKY LEASH product and CJH's misrepresentations to Tekno concerning same, Tekno would not have entered into the LL Agreement with CJH and would not have been harmed by same.

## NATURE OF ACTION

7.      This action seeks the following relief: (i) a declaratory judgment of non-infringement and arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, (2) a judgment of liability and damages against CJH due to CJH's tortious violation of New Jersey state and common law, including but not limited to (a) breach of duty of good faith and fair dealing, (b) breach of warranty of merchantability and (c) negligent misrepresentation.

8.      Specifically, Tekno seeks a declaration that it has not infringed upon CJH's asserted trademark rights by virtue of Tekno's sale and offer for sale of LUCKY LEASH Product and that CJH's asserted trademark in "Lucky's Leash" is merely descriptive and lacks secondary meaning, and is therefore not protectable under the Lanham Act.

9.      Further, Tekno seeks a money judgment for damages incurred by Tekno as a direct result of CJH's actions and omissions in inducing Tekno to sign the LL Agreement and in CJH's own performance under the LL Agreement.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 with respect to the claims arising under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

11.      This Court has supplemental jurisdiction over Tekno's state and common-law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because (a) this is an action brought pursuant to the Lanham Act, (b) a substantial part of the events giving rise to Counterclaim-Defendant's claims occurred within this district, (c) Tekno's rights are seriously affected in this District, and (d) the LL Agreement which governs the relationship between Counterclaim-Plaintiff and Counterclaim-Defendants and forms a substantial basis of each party's claims and defenses contains a Choice-of-Forum clause selecting New Jersey.

## THE PARTIES

13.     Tekno is a corporation existing in and under the laws of the State of New Jersey with a principal place of business located in Rutherford, New Jersey.

14.     Upon information and belief, CJH is a limited liability company existing in and under the laws of the State of North Carolina with a principal place of business located in Charlotte, North Carolina.   Upon information and belief, at all relevant times, Jarrod Lee Swanger ("Swanger") is and was CJH's sole officer, manager, employee and agent.

## FACTUAL BACKGROUND

15.     Upon information and belief, Swanger created the prototype for LUCKY LEASH Product in 2013 or 2014, and thereafter created CJH as a holding company for all legal rights and commercial interest in LUCKY LEASH Product and associated intellectual property.

16.     LUCKY LEASH Product includes both a dog collar and a dog harness, either of which features a dog leash that CJH claims "quickly pulls out from the dog collar" for use, and which, when no longer needed, retracts back into the dog collar or harness, where a "patented magnet design holds the leash securely in place and out of the way."[1]

---

[1] Lucky's Leash - Official Commercial, OfficialAsSeenOnTV1, YouTube (Mar. 7, 2018), https://www.youtube.com/watch?v=EIfeYK5nzD0

17.     On or about October 23, 2014, a patent application bearing Serial No. 14/522,085 was filed with the U.S. Patent and Trademark Office by or on behalf of CJH and seeking a utility patent for LUCKY LEASH Product.

18.     Thereafter, CJH abandoned Patent Application No. 14/522,085, and upon information and belief, CJH never obtained any patent for LUCKY LEASH Product.

19.     On or about October 9, 2017, CJH and Tekno entered into the LL Agreement in connection with LUCKY LEASH Product. The LL Agreement can be summarized by its preamble, which states, in relevant part:

> In exchange for Tekno's promise to purchase CJH['s] existing inventory of product . . . and [to] share a percentage of profits, CJH agrees to disclose all know-how to Tekno as well as grant Tekno an exclusive license to make, use, advertise, sell and otherwise exploit the product and associated intellectual property attach to same.

Exhibit B to Complaint.

20.     This preamble clause is buttressed by formal terms of the LL Agreement, including the follow relevant excerpts:

> 4.   CJH agrees to provide Tekno all information and know-how that relates to [LUCKY LEASH] Product so Tekno is able to produce a complete product on its own. . . .
>
> 5.   Tekno agrees to use best efforts to sell [LUCKY LEASH Product] and agrees to pay CJH 2.5% of net profits made by Tekno's sales. . . .
>
> 7.   CJH agrees that during the existence of this Agreement, including any extensions or renewals thereof, Tekno has exclusive rights to make, use, advertise, sell and otherwise exploit the [LUCKY LEASH] product and associated intellectual property rights attached to same.
> . . .
> 10.   Upon termination of this Agreement, for any reason, Tekno is authorized to sell-off any inventory that is in its possession or in the process of being created according to instructions made by Tekno prior to the termination.

*Id.*

21.     Upon information and belief, as part of negotiations or communications made in advance of executing the LL Agreement, CJH through Swanger represented to Tekno that LUCKY LEASH Product would be a commercial success.

22.     Upon information and belief, as part of negotiations or communications made in advance of executing the LL Agreement, CJH through Swanger represented to Tekno that LUCKY LEASH Product was of equal or better quality than other dog restraint systems featuring a retractable leash then on the market.

23.     Upon information and belief, as part of negotiations or communications made in advance of executing the LL Agreement, CJH through Swanger represented to Tekno and the public that LUCKY LEASH Product featured an "easily retractable" dog leash that was "secured" in a dog collar or harness by a "patented magnet design."

24.     Upon information and belief, the magnet design utilized in LUCKY LEASH is not and never has been patented, in the United States or in any other jurisdiction.

25.     Although Tekno followed the manufacturing and engineering instructions provided to it by CJH, LUCKY LEASH Product did not function as it was intended to function nor as it was advertised.

26.     Despite Swanger's assurances, LUCKY LEASH Product was a poorly designed product that failed to yield the profits anticipated at the time the parties entered into the LL Agreement.

27.     Upon information and belief, CJH received notice from third parties addressing the poor quality of the design of LUCKY LEASH Product prior to October 2017.

28.     Upon information and belief, CJH and Swanger knew or should have known that the design of LUCKY LEASH Product was flawed or otherwise of poor quality prior to October 2017.

29.     At all relevant times, CJH failed or refused to fix or cure known or knowable flaws or problems with the design of LUCKY LEASH Product.

30.     At all relevant times, CJH failed or refused to inform Tekno how to fix or cure known or knowable flaws or problems with the design of LUCKY LEASH Product.

31.     CJH has failed to utilize good faith in performing its obligations and in enforcing its rights under the LL Agreement.

32.     For instance, by failing or refusing to provide Tekno with information to fix or cure known or knowable defects in the design of LUCKY LEASH PRODUCT, CJH has failed or refused to perform its contractual obligation to "provide Tekno all information and know-how . . . to produce a complete product on its own."

33.     Further to CJH's accusations that Tekno is violating federal and state law, as well as breaching the LL Agreement, by virtue of continuing to market and sell existing LUCKY LEASH Product as Tekno is permitted to do under Section 10 of the LL Agreement, CJH is enforcing the LL Agreement in bad faith.

34.     Upon information and belief, CJH is willfully and intentionally misrepresenting Tekno's rights under the LL Agreement for purposes of denying Tekno the benefit of its bargain.

## AS AND FOR A FIRST COUNTERCLAIM
### (Declaration of Non-Infringement)

35.     Tekno repeats and realleges the allegations contained in the foregoing Counterclaim Paragraphs 1 through 34 as though fully set forth herein.

36.     This claim arises under the laws of the United States, and specifically the Lanham Act, 15 U.S.C., § 1051 *et seq.*, and Declaratory Judgment Act, 28 U.S.C. § 2201.

37.     CJH has claimed that Tekno has engaged in trademark infringement in violation of the Lanham Act by "marketing, selling, and promoting Lucky's Leash after termination" of the LL Agreement. (Compl. ¶ 33).

38.     CJH has claimed that Tekno has engaged in false advertising in violation of the Lanham Act by making "false statements of fact about Lucky's Leash, and [Tekno's] entitlement to use and sell it . . .after the Contract was terminated." (Compl. ¶ 39).

39.     Section 10 of the LL Agreement explicitly authorizes Tekno to "sell-off any inventory that is in [Tekno's possession] or in the process of being" and Tekno desires to continue to sell-off existing inventory of LUCKY LEASH Product.

40.     Implicitly, a contractual right to "sell-off any inventory," includes the right to market and promote such inventory, as well as the right to claim legal entitlement to do so.

41.     As such, an actual, present and justiciable controversy has arisen between CJH and Tekno concerning Tekno's right to use the LUCKY LEASH mark in connection with Tekno's sale of LUCKY LEASH Product.

## AS AND FOR A SECOND COUNTERCLAIM
### (Breach of Duty of Good Faith and Fair Dealing)

42.     Tekno repeats and realleges the allegations contained in the foregoing Counterclaim Paragraphs 1 through 41 as though fully set forth herein.

43.     This claim arises under the statutes and common law of the State of New Jersey.

44.     The LL Agreement is a contract for the sale of goods or sale of future goods made between two merchants, and therefore, is subject to New Jersey's Uniform Commercial Code.

45.     Under New Jersey's U.C.C., every contract "imposes an obligation of good faith in its performance and enforcement." N.J.S.A. § 12A:1-304.

46.     CJH has failed to perform its obligations in good faith by failing to disclose to Tekno important information or know-how that CJH possessed or should have known regarding flaws in the design of LUCKY LEASH Product.

47.     CJH is attempting to enforce its rights under the LL Agreement in bad faith by willfully ignoring the clear and explicit language of Section 10 of the Agreement and knowingly and willfully fabricating charges of infringement and unlawfulness against Tekno.

48.     CJH is performing and/or enforcing the LL Agreement in bad faith for the purposes of denying Tekno the intended benefit of the bargain.

49.     CJH's actions and omissions directly caused poor market performance of LUCKY LEASH Products, which failed to achieve commercial success.

50.     By reason of CJH's actions and omissions, made in bad faith and in derogation of Tekno's contractual rights, Tekno has been injured in an amount to be determined at trial.

## AS AND FOR A THIRD COUNTERCLAIM
### (Breach of Warranty of Merchantability)

51.     Tekno repeats and realleges the allegations contained in the foregoing Counterclaim Paragraphs 1 through 50 as though fully set forth herein.

52.     This claim arises under the statutes and common law of the State of New Jersey.

53.     Under New Jersey's U.C.C., "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.J.S.A. § 12A:2-314.

54.     CJH breached the warranty of merchantability insofar as CJH knew or should have known about defects or flaws in the design of LUCKY LEASH Products, which substantially impaired the value of LUCKY LEASH Products, but failed to fix such defects or flaws and failed to provide Tekno with information or know-how to fix such defects or flaws.

55.     CJH breached the warranty of merchantability insofar as LUCKY LEASH Products are of below-average quality when compared to other dog restraint systems with retractable leashes on the market.

56.     CJH breached the warranty of merchantability insofar as LUCKY LEASH Products are not fit for the ordinary or intended purpose of such products.

57.     CJH breached the warranty of merchantability insofar as LUCKY LEASH Products fail to conform to promises made by CJH, including but not limited to CJH's misrepresentations that LUCKY LEASH Products feature a "patented magnet design."

58.     By reason of CJH's actions and omissions, Tekno was forced to lay out costs associated with the manufacture and marketing of a doomed product, which could have been avoided or fixed but for CJH's failures.

59.     By reason of CJH's actions and omissions, Tekno has been injured in an amount to be determined at trial.

## AS AND FOR A FOURTH COUNTERCLAIM
### (Negligent Misrepresentation)

60.     Tekno repeats and realleges the allegations contained in the foregoing Counterclaim Paragraphs 1 through 59 as though fully set forth herein.

61.     This claim arises under the common law of the State of New Jersey.

62.     CJH knew or should have known of flaws in the design of LUCKY LEASH Product before the parties entered into the LL Agreement.

63.     By failing or refusing to disclose known or apparent flaws in its design of LUCKY LEASH Product, CJH negligently misrepresented the quality, merchantability and marketability of LUCKY LEASH Product to Tekno.

64.     CJH knew or should have known that Tekno relied upon CJH for all information and know-how regarding the design and construction of LUCKY LEASH Product.

65.     By failing or refusing to disclose information and know-how to Tekno, CJH negligently misrepresented the method of manufacturing LUCKY LEASH Product.

66.     Tekno justifiably relied upon CJH's representations to its own detriment.

67.     By reason of CJH's negligent misrepresentations, Tekno has been injured in an amount to be determined at trial.

24

**WHEREFORE**, Tekno Products Inc. respectfully requests that the Court:

A.      Enter judgment declaring Tekno's right to market and sell certain products bearing the LUCKY LEASH trademark;

B.      Enter judgment of non-infringement of trademarks in favor of Tekno;

C.      Enter a money judgment against CJH in amount to be determined at trial;

D.      Award Tekno its legal fees and costs as contractually authorized by Section 8 of the October 9, 2017 Agreement between CJH and Tekno, or as otherwise permitted by law; and

E.      Awarding Tekno such other and further relief as the Court may deem just and proper.


## JURY DEMAND

Counterclaim-Plaintiff demands a trial by jury.


Dated: December 14, 2020
        New York, New York

                                        **GOTTLIEB, RACKMAN & REISMAN, P.C.**
                                        *Attorneys for Defendants Tekno Products Inc. and Jeff Kurani, Individually*
                                        270 Madison Avenue
                                        New York, New York 10016
                                        212-684-3900

                                        By: /s/   *Barry R. Lewin*

                                        Barry R. Lewin (blewin@grr.com)
                                        Jonathan Purow (jpurow@grr.com) (*pro hac vice* to be submitted)
                                        David D. Rodrigues (drodrigues@grr.com)
                                        Shane Wax (swax@grr.com) (*pro hac vice* to be submitted)