**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CJH ENTERPRISES LLC d/b/a LUCKY'S LEASH, | Civil Action No. 20-CV-15067 |
| Plaintiff, | **NOTICE OF MOTION TO DISMISS THE COMPLAINT AS AGAINST JEFF KURANI, INDIVIDUALLY** |
| v. | |
| TEKNO PRODUCTS INC. and JEFF KURANI, individually, | Motion Date:  Jan. 19, 2021 |
| Defendants. | |

**TO:    Plaintiff via ECF**

PLEASE TAKE NOTICE that upon the accompanying Memorandum of Law, and all of the pleadings and proceedings heretofore had herein, Defendants will move this Court before the Honorable Susan D. Wigenton, U.S.D.J., on **January 19, 2021**, and ten o'clock at the forenoon or as soon thereafter as counsel may be heard for an Order pursuant to Fed. R. Civ. P. R.12(b)(6) dismissing the Complaint in its entirety as against Defendant Jeff Kurani.

Dated: December 14, 2020
          New York, New York

**GOTTLIEB, RACKMAN & REISMAN, P.C.**
*Attorneys for Defendants Tekno Products Inc.*
*and Jeff Kurani, Individually*
270 Madison Avenue
New York, New York 10016
212-684-3900

By: /s/  *Barry R. Lewin*                _

Barry R. Lewin (blewin@grr.com)
Jonathan Purow (jpurow@grr.com) (*pro hac vice* to be submitted)
David D. Rodrigues (drodrigues@grr.com)
Shane Wax (swax@grr.com) (*pro hac vice* to be submitted)

Barry Lewin (blewin@grr.com)
Jonathan Purow (jpurow@grr.com) (*pro hac vice* to be submitted)
David D. Rodrigues (drodrigues@grr.com)
Shane Wax (swax@grr.com) (*pro hac vice* to be submitted)
**GOTTLIEB, RACKMAN & REISMAN, P.C.**
270 Madison Avenue
New York, New York 10016
212-684-3900

*Attorneys for Defendants Tekno Products Inc. and Jeff Kurani*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CJH ENTERPRISES LLC d/b/a LUCKY'S LEASH,<br><br>Plaintiff,<br><br>v.<br><br>TEKNO PRODUCTS INC. and JEFF KURANI, individually,<br><br>Defendants. | Civil Action No. 20-CV-15067<br><br>Hon. Susan D. Wigenton<br><br>Motion Date:  Jan. 19, 2021 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION PURSUANT TO RULE 12(b)(6) TO DISMISS THE COMPLAINT AS AGAINST JEFF KURANI, INDIVIDUALLY

# TABLE OF CONTENTS

I.    **PRELIMINARY STATEMENT**......................................................................1

II.   **BACKGROUND**.........................................................................................3

III.  **APPLICABLE LAW & RULES**....................................................................5

     A. Fed. R. Civ. P. Rule 12(b)(6) ...........................................................5

IV.  **LEGAL ANALYSIS AND ARGUMENTS**....................................................7

     A. The Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) as to
        Defendant Jeff Kurani Because The Complaint Utterly Fails To Allege
        Sufficient Facts Pertaining to Kurani's Individual Involvement.................8

        i.   *The Complaint Fails to Allege Sufficient Facts to Plausibly*
               *Suggest That Tekno is Kurani's Corporate Alter Ego In Order*
               *For this Court to Pierce the Corporate Veil* .......................................9

        ii.  *The Complaint Fails to Allege Sufficient Facts About*
               *Kurani's Individual Involvement In Any  Acts Constituting*
               *Trademark Infringement* ..................................................................12

I.    **CONCLUSION**.......................................................................................17

# <u>TABLE OF AUTHORITIES</u>

*800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273 (D.N.J. 2006) ..... 13, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................6, 7

*AT&T v. Winback & Conserve Program*, 42 F.3d 1421 (3d Cir. 1994) ........... 14, 15

*Barium Steel Corp. v. Wiley*, 379 Pa. 38, 108 A.2d 336 (Pa. 1954) ........................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................6

*Bootay v. KBR, Inc.*, 437 F. App'x 140 (3d Cir. 2011) ...........................................10

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) ..............................6, 7

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) .................... 7, 11, 13

*Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145 (3d Cir. 1988) ...................10

*Davis v. City of Phila.*, 821 F.3d 484 (3d Cir. 2016) ..............................................10

*Donald J. Trump for President, Inc. v. Sec'y Commw. of Pa.*,
    No. 20-3331 (3d. Cir. Nov. 27, 2020) .......................................................... 6, 14

*Elec. Lab. Supply Co. v. Cullen*, 977 F.2d 798 (3d Cir. 1992) ...........................8, 12

*Emerson Radio Corp. v. Emerson Quiet Kool Co. Ltd.*,
    No. 2:17-cv-5358-SDW-LDW (D.N.J. Mar. 5, 2018) ..........................................6

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
    774 F.3d 192 (3d Cir. 2014) ...............................................................................16

*In re Schering Plough Corp.*, 678 F.3d 235 (3d Cir. 2012) ......................................5

*Internet Prods. LLC v. LLJ Enters.*, No. 18-15421-RBK-AMD,
    2020 U.S. Dist. LEXIS 220090 (D.N.J. Nov. 24, 2020) .................................8, 12

*Int'l Playthings LLC v. Toy Teck Ltd., LLC*, No. 2:11-6832-KM,
    2013 U.S. Dist. LEXIS 186779 (D.N.J. July 23, 2013) ........................................8

*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S 844 (1982)......................................14

*Katiroll Co. v. Kati Roll & Platters, Inc.*, No. 10-CV-3620,
2012 U.S. Dist. LEXIS 104104 (D.N.J. July 26, 2012) ........................................13

*Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376 (3d Cir. 2016)...................................15

*Linus Holding Corp. v. Mark Line Indus., LLC*,
376 F. Supp. 3d 417 (D.N.J. 2019)......................................................................10

*Major League Baseball Promotion Corp. v. Colour-Tex, Inc.*,
729 F. Supp. 1035, 1046 (D.N.J. 1990)............................................................8, 10

*Mueller v. Seaboard Commercial Corp.*, 5 N.J. 28 (1950) .....................................10

*N.J. Dep't Envtl. Protection v. Ventron Corp.*, 94 N.J. 473,
468 A.2d 150 (1983)...........................................................................................10

*Parker v. Google, Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006),
*aff'd* 242 F. App'x 833 (3d Cir. 2007).................................................................13

*Pearson v. Component Tech. Corp.*, 247 F.3d 471 (3d Cir. 2001).....................8, 10

*Robinson v. Jackson Hewitt, Inc.*,
No. 19-CV-9066-SDW-LDW (D.N.J. Oct. 31, 2019)................................. 5, 7, 13

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) ...........................7

*Shenango Inc. v. Am. Coal Sales Co.*,
No. 06-cv-149, 2007 WL 2310869 (W.D. Pa. Aug. 9, 2007) .............................10

*Zubik v. Zubik*, 384 F.2d 267, 275 (3d Cir. 1967) ...................................................9

**Rules**

Fed. R. Civ. P. Rule 12(b)(6) .......................................................................... passim

Fed. R. Civ. P. Rule 8 ............................................................................................1

## I.   <u>PRELIMINARY STATEMENT</u>

This memorandum of law is submitted in support of the motion to dismiss the Complaint as against Defendant Jeff Kurani only ("Defendant" or "Kurani") for failure to state an actionable claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").[1]  As explained herein, the Complaint must be dismissed because it contains only sparse, threadbare conclusory recitals regarding Kurani's purported involvement in the tortious scheme alleged by Plaintiff CJH Enterprises LLC d/b/a Lucky's Leash ("Plaintiff" or "CJH"), and therefore fails to satisfy Fed. R. Civ. P. Rule 8 pleading requirements under *Iqbal* and *Twombly*.

Plaintiff's Complaint sets forth seven causes of action against co-Defendant Tekno Products, Inc. ("Tekno"); however only the First and Second Causes of Action – trademark infringement and false advertising, respectively – are asserted against Kurani as an individual. While a plain reading of the Complaint makes clear that each of Plaintiff's claims arises out of a soured business relationship between CJH and Tekno, it is patently unclear as to how Kurani was directly involved or why he could or should be held individually liable for the allegedly tortious conduct of a corporate party, simply because he is an officer of that corporate party.

---

[1] Defendant Jeff Kurani reserves any and all right to assert defenses not waived under Fed. R. Civ. P. 12(h)(1) in a future pleading or motion, if necessary.  Furthermore, as this motion only seeks relief on behalf of Kurani, any and all rights and defenses belonging to Non-Moving Defendant Tekno Products, Inc. are expressly reserved.

Specifically, Plaintiff's claims arise out of a license agreement that granted Tekno the exclusive right to make, use, advertise and sell a certain product developed by CJH and subject of an abandoned U.S. utility patent application filed on behalf of CJH, in exchange for Tekno purchasing pre-existing product from CJH and paying a royalty on any future sales.  Suffice to say, the business relationship did not bear the intended fruit and now CJH brings this action in vengeance for misperceived wrongs, and seeks to soil the good name of Defendant Jeff Kurani, who has no business being named in this suit individually.

Significantly, however, the Complaint does not allege that Kurani personally directly or committed any tortious conduct and it fails to offer any details whatsoever as to Kurani's involvement in the allegedly tortious conduct giving rise to Plaintiff's purported injuries and thus fails to explain why the Court should effectively "pierce the corporate veil" or otherwise ignore Tekno's corporate form to hold Kurani individually liable for torts not committed by him directly, or at all.  Plaintiff's allegations are limited to conclusory and threadbare legal recitals, made "upon information and belief," such as "Kurani totally controlled Tekno's operations" and that Tekno's acts and omissions were made "at the direction of Kurani," without even an iota of specificity.  Moreover, even Plaintiff's threadbare recitals fail to allege any unlawful conduct by Kurani inasmuch as the Complaint merely alleges that Kurani "directed" Tekno to take actions it was contractually entitled to take.

Accordingly, the Complaint is fatally flawed, at least with respect to Kurani, individually, and utterly fails to plausibly allege any legally actionable claims as against Kurani, individually.

## II.  __BACKGROUND__

As alleged in the Complaint, CJH and Tekno entered into a commercial contract on or about October 4, 2017, concerning a dog collar with a retractable leash initially developed by Plaintiff called "Lucky's Leash" (the "LL Agreement")  *See* Compl. ¶¶ 2, 7 16; Exhibit B to Complaint (Dkt. 5-1) (the LL Agreement).  The LL Agreement gave Tekno an "exclusive license to make, use, advertise, sell and otherwise exploit the product and associated intellectual property attached to" Lucky's Leash, in exchange for, *inter alia*, a royalty in the amount of 2.5% of net profits on Tekno's sales of Lucky's Leash. Id.

In an attempt to turn a pipe dream into reality, Plaintiff alleges that "Lucky's Leash was an instant hit, and, upon information and belief, Tekno sold a voluminous amount of Lucky's Leash," but that Tekno failed to pay royalties to CJH. *See* Compl. ¶¶ 18 & 19.  This failure to pay, Plaintiff alleges, was because "[u]pon information and belief, Kurani totally controlled Tekno's operations, and ensured that Tekno did not pay CJH."  *Id.* ¶20.  However, the Complaint does not support the conclusory allegation of "total control" with even a single factual allegation, such as alleging

3

the co-mingling of business and private finances or any other red flags typical of an individual abusing the corporate form for personal benefit.

Next, Plaintiff claims that the LL Agreement expired on or about October 4, 2018,[2] and that thereafter, "Tekno continued to market and sell Lucky's Leash through the internet and television, while continuing to use the Lucky's Leash trademark and trade dress," Compl. ¶ 26, which, if true, was permitted under Section 10 of the LL Agreement, which states: "Upon termination of this Agreement . . . Tekno is authorized to sell-off any inventory that is in its possession or in the process of being created . . . prior to the termination" Exhibit B to Complaint. Plaintiff, however, ignoring this clear contractual language, alleges that "Tekno's right to sell Lucky's Leash and utilize CJH's intellectual property ended upon the Contract's expiration." Compl. ¶ 27. Importantly, the Complaint does not allege that Tekno continued to manufacture Lucky's Leash after the purported termination date of the LL Agreement, only that Tekno continued to sell product, which Plaintiff alleges upon information and belief, was "at Kurani's direction." *Id.* Thus, at most, Plaintiff alleges that "Tekno, at Kurani's direction," continued to sell the Lucky's Leash in accordance with Section 10 of the LL Agreement.

---

[2] As noted below, the Court is required at this stage to accept this fact as true. To be sure, however, the LL Agreement's *initial* one-year term would have expired on October 9, 2018, but Paragraph 6 of the LL Agreement may have granted Tekno the right to renew or extend the term for up to one additional year.

In any event, the Complaint does not expound any facts supporting the bare legal conclusion that Tekno committed trademark infringement "at Kurani's direction."    For instance, the Complaint does not identify any specific acts or omissions by Kurani himself, nor any specific instruction made by Kurani, nor any individual purportedly acting at Kurani's behest and direction.  The Complaint does not even identify *when* Kurani ostensibly directed Tekno to continue selling Lucky's Leash other than to say it occurred after the LL Agreement was terminated, ignoring the contractual provision that explicitly authorized Tekno to continue selling Lucky's Leash products after the termination of the LL Agreement.

Ultimately, the Complaint is utterly devoid of specifics as to just what Defendant Kurani supposedly did such that he could be held personally liable for the acts of Tekno.

## III.    APPLICABLE LAW & RULES

### A.    Fed. R. Civ. P. Rule 12(b)(6)

"When considering a motion to dismiss under Rule 12(b)(6), the Court must 'accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party.'" *Robinson v. Jackson Hewitt, Inc.*, Case No. 19-CV-9066-SDW-LDW at 4 (D.N.J. Oct. 31, 2019) (*quoting In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012)).  "While a complaint attacked by a

Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up); *see Donald J. Trump for President, Inc. v. Sec'y Commw. of Pa.*, No. 20-3331, slip op p.12 (3d. Cir. Nov. 27, 2020) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

To survive a Rule 12(b)(6) motion, a Complaint must allege "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, a standard which is met when the factual pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *See Emerson Radio Corp. v. Emerson Quiet Kool Co. Ltd.*, Case No. 2:17-cv-5358-SDW-LDW at *3-4 (D.N.J. Mar. 5, 2018) (*quoting Iqbal*, 556 U.S. at 678: "The pleading standard under Rule 8 requires 'more than an unadorned, the defendant-unlawfully-harmed-me-accusation.'"). "This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully,' [and a] complaint which pleads facts 'merely consistent with a defendant's liability, stops short of the line between possibility and plausibility of entitlement of relief.'" *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220–21 (3d Cir. 2011) (*quoting Iqbal*, 129 S. Ct. at 1949).

In the Third Circuit, courts take a three-step approach to determining the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Id.* (*quoting Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)); *see Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) ("the clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point."); *Robinson*, No. 19-cv-9066-SDW at pp. *4-5 (*quoting Iqbal*, 556 U.S. at 678: "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## IV.   LEGAL ANALYSIS AND ARGUMENTS

The Complaint ought to be dismissed with prejudice as against Kurani because the Complaint is devoid of any factual allegations as to his personal involvement and the only pleaded allegations pertaining to Kurani are specious labels and conclusions, and because any amendment would be futile.

7

**A.      The Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) as to Defendant Jeff Kurani Because The Complaint Utterly Fails To Allege Sufficient Facts <u>Pertaining to Kurani's Individual Involvement.</u>**

Generally, a corporate officer cannot be held personally liable for a corporation's tortious acts, including acts constituting trademark infringement, merely by virtue of his or her role in managing the corporation; a plaintiff must plead and establish that either (i) the Court should ignore the corporate form and "pierce the corporate veil" in cases where the officer has abused the corporate form for his own benefit and has become so intertwined with the corporation that they are effectively aliases for each other; or (ii) the officer "actually and substantially participates in the corporation's acts." *Internet Prods. LLC v. LLJ Enters.*, No. 18-15421-RBK-AMD, 2020 U.S. Dist. LEXIS 220090, at \*26 (D.N.J. Nov. 24, 2020) (*quoting Elec. Lab. Supply Co. v. Cullen*, 977 F.2d 798, 807-08 (3d Cir. 1992)); *see Int'l Playthings LLC v. Toy Teck Ltd., LLC*, No. 2:11-6832-KM, 2013 U.S. Dist. LEXIS 186779, at \*19 (D.N.J. July 23, 2013) (*quoting* 4 McCarthy on Trademarks and Unfair Competition § 25:24 (4th ed.) for the proposition that individual liability requires an officer "personally take part in infringing activities or specifically direct [others] to do so"); *Major League Baseball Promotion Corp. v. Colour-Tex, Inc.* ("*MLB Promo*"), 729 F. Supp. 1035, 1046 (D.N.J. 1990); *see generally Pearson v. Component Tech. Corp.*, 247 F.3d 471, 483-87 (3d Cir. 2001) (discussing various

theories of individual liability for corporate acts); *Zubik v. Zubik*, 384 F.2d 267, 275 (3d Cir. 1967) ("The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort . . . unless he specifically directed the particular act to be done, or participated, or cooperated therein.").

The Complaint only asserts bare conclusions as to Kurani and therefore fails to adequately allege any facts to permit the Court to infer that either scenario of indirect liability is plausible.

> i.   *The Complaint Fails to Allege Sufficient Facts to Plausibly Suggest That Tekno is Kurani's Corporate Alter Ego In Order For this Court to Pierce the Corporate Veil*

The Complaint utterly fails to allege any facts to that would plausibly support a theory of liability that would require the Court to "pierce the corporate veil" to hold Kurani personally liable for the purported torts of Tekno.

"Under New Jersey law, there are two elements for piercing the corporate veil in order to impose liability on corporate principals. First, one corporation must be organized and operated as to make it a mere instrumentality of another [party]. Second, the dominant [party] must be using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law." *MLB Promo*, 729 F. Supp.

9

at 1046 (*citing Mueller v. Seaboard Commercial Corp.,* 5 N.J. 28, 34-35 (1950); *N.J. Dep't Envtl. Protection v. Ventron Corp.*, 94 N.J. 473, 501, 468 A.2d 150 (1983); *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988)); *see Bootay v. KBR, Inc.*, 437 F. App'x 140, 143 (3d Cir. 2011) ("The requirements for corporate veil piercing, although rather imprecise in their various formulations, are demanding ones." (cleaned up)); *Pearson*, 247 F.3d at 484–85 (identifying factors courts consider, none of which are alleged here); *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 425 (D.N.J. 2019) (same).

"The mere presence of corporate dominance is not grounds for piercing the corporate veil, and piercing is inappropriate if the subservient corporation was incorporated and operated for legitimate business purposes." *Bootay*, 437 F. App'x at 143 (*citing Craig*, 843 F.2d at 149, *Ventron*, 94 N.J. at 501); *see also Davis v. City of Phila.*, 821 F.3d 484, 488 (3d Cir. 2016) (*quoting Barium Steel Corp. v. Wiley*, 379 Pa. 38, 108 A.2d 336, 341 (Pa. 1954): "The fact that one person owns all of the stock does not make him and the corporation one and the same person."); *Shenango Inc. v. Am. Coal Sales Co.*, No. 06-cv-149, 8, 2007 WL 2310869 *4 (W.D. Pa. Aug. 9, 2007) ("the pleader must state facts showing a reason to pierce the corporate veil. . . Simply alleging [Defendant's] ownership and control over the corporations is irrelevant and immaterial").

10

Here, the Complaint contains only one bare, conclusory allegation concerning only Kurani's purported control over Tekno: "At all relevant times herein, Kurani was Chief Executive Officer of Tekno, and upon information and belief, is a resident of the State of New Jersey and has total and unfettered control over Tekno." Compl. ¶ 12. "Total and unfettered control" is a "legal point" and as an unsupported conclusory statement, it is "unworthy of weight in analyzing the sufficiency of a complaint." *Connelly*, 809 F.3d at 790. Since Plaintiff utterly fails to expound upon this conclusory idea of "control" without pleading any supporting factual allegations, the Court cannot plausibly infer that the first "corporate dominance" prong of the test will be met.

Moreover, the Complaint does not assert any facts alleging that Tekno was created or operated for criminal or fraudulent purposes and vague allegations of breach of contract and trademark infringement hardly amount to "extraordinary circumstances" to merit piercing the corporate veil. Thus, even assuming *arguendo* that the conclusion that Kurani has "total and unfettered control over Tekno" was sufficient to plausibly allege corporate dominance, the Complaint utterly fails to satisfy the second prong of the test.

As such, the Complaint clearly fails to allege sufficient facts, or any facts for that matter, to plausibly support a theory of piercing Tekno's corporate veil to impose liability unto Kurani individually.

11

> ### ii. The Complaint Fails to Allege Sufficient Facts About Kurani's Individual Involvement In Any Acts Constituting Trademark Infringement

In addition to the foregoing, the Complaint fails to adequately allege a basis under the Lanham Act by which to hold Kurani accountable for Tekno's allegedly infringing sales. The Complaint fails to set forth any facts that plausibly suggest Kurani committed any acts that constitute direct or indirect trademark infringement.

Pointedly, the Complaint does not allege that Kurani individually performed any action that might even plausibly constitute direct infringement or that he should otherwise be held liable as a joint tortfeasor. Instead, the Complaint ostensibly seeks to hold Kurani indirectly liable for the allegedly infringing acts of Tekno. Assuming *arguendo* (and only to the extent required under Rule 12(b)(6)) that the Complaint adequately alleges that Tekno committed trademark infringement, the Complaint fails to set forth any factual basis why Kurani should be found personally liable..

First, the Complaint fails to set forth any factual basis for finding that Kurani is directly liable for trademark infringement. While "a person who knowingly and significantly participates in another's act of trademark infringement is himself guilty of infringement," *Cullen*, 977 F.2d at 807, and therefore a corporate officer who "actually and substantially participates in the corporation's acts" of infringement may be held individually liable, *Internet Prods.*, No. 18-CV-15421, 2020 U.S. Dist. LEXIS 220090, at *26, "'participation in activities merely related to the infringing

act is not enough' to find personal liability for the infringement." *Katiroll Co. v. Kati Roll & Platters, Inc.*, No. 10-CV-3620, 2012 U.S. Dist. LEXIS 104104, at *10 (D.N.J. July 26, 2012) (*quoting Parker v. Google, Inc*., 422 F. Supp. 2d 492, 503 (E.D. Pa. 2006), *aff'd* 242 F. App'x 833 (3d Cir. 2007)).

Here, the Complaint is devoid of any non-conclusory, factual allegations that could plausibly infer Kurani's individual conduct arises to the level of "knowing[] and significant[]" or "actual[] and substantial[] participation."  With respect to Kurani's involvement in Tekno's acts alleging constituting infringement, the Complaint only alleges that, after the LL Agreement expired on or about October 4, 2018, "Tekno continued to market and sell Lucky's Leash through the internet and television, while continuing to use the Lucky's Leash trademark and trade dress . . . at Kurani's direction." Compl. ¶¶ 26–27.   Plaintiff's allegation that Kurani "directed" Tekno to "market and sell Lucky's Leash" is "conclusory and unworthy of weight," and entirely unsupported by any factual details concerning either Kurani's knowledge of any infringement or the extent and significance of his alleged participation. *Connelly*, 809 F.3d at 790; *see Robinson*, No. 19-cv-9066-SDW *4–5.

Next, the Complaint fails to adequately allege any indirect liability vis-à-vis contributory trademark infringement liability.  *See 800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 280 (D.N.J. 2006) ("contributory infringement . . . requires proof of either an intent to induce another to infringe a trademark or continued

13

supply of goods or services to one whom the supplier (contributory infringer) knows or has reason to know is engaging in trademark infringement") (*citing Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S 844, 854 (1982); *AT&T v. Winback & Conserve Program*, 42 F.3d 1421 (3d Cir. 1994)).  The Complaint is utterly devoid of any allegations pertaining to Kurani's knowledge or intent and Plaintiff does not even claim to have put Kurani on notice of any perceived infringement prior to August 24, 2020.  Moreover, while the August 24, 2020 letter conclusorily asserts that "CJH suspects Tekno of engaging in unfair competition, and . . . trademark and copyright infringement," the letter does not identify the specific conduct or factual basis for CJH's suspicion, and thus the letter fails to provide any semblance of reasonable notice or knowledge.  *See* Exhibit C to Complaint (Dkt. No. 5-2); *800-JR Cigar*, 437 F. Supp. 2d at 280 (contributory infringement requires proof of knowledge or intent). It is well-established that mere suspicion of wrongdoing alone, without any factual predicate, is an insufficient basis to haul someone into court. *See, e.g.*, *Donald J. Trump for President.* No. 20-3331, slip op p.12 ("'Upon information and belief' is a lawyerly way of saying that the [Plaintiff] does not know that something is a fact but just suspects it or has heard it. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Nor has Plaintiff adequately alleged that Tekno has directly committed trademark infringement in the first place such that Kurani could be held indirectly

or jointly liable.  *See AT&T*, 42 F.3d at 1432 (liability for contributory infringement requires, *inter alia*, "knowledge of direct infringement"); *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) ("Secondary liability for . . . infringement does not exist in the absence of direct infringement by a third party.").  Specifically, Plaintiff's allegation that "Tekno continued to market and sell Lucky's Leash" after the LL Agreement expired on or about October 4, 2018 "at Kurani's direction," is insufficient to make out a plausible claim for trademark infringement given the express language of Section 10 of the LL Agreement, which authorizes Tekno to do just what Plaintiff alleges Tekno has done.  Since Tekno's actions, as factually alleged in the Complaint and compared to the language of the LL Agreement, cannot plausibly constitute direct trademark infringement, there is no basis for Kurani to be held jointly or secondarily liable.

Accordingly, Plaintiff has utterly failed to plead sufficient facts that would support the inference that Kurani could be held personally liable for trademark infringement.

   iii. *The Complaint Fails to Allege Sufficient Facts About Kurani's Individual Involvement In False Advertising*

Finally, for substantially the same reasons as set forth above, the Court must also dismiss Plaintiff's second cause of action for False Advertising as against Kurani for failure to state a claim.

> To establish a claim for false advertising, a Lanham Act plaintiff must prove five elements: 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 195 (3d Cir. 2014).  In this case, the Complaint fails to allege any facts that that might plausibly support the legal elements of such a claim, and Plaintiff's conclusory allegations addressing the legal elements are belied by the language of the LL Agreement.

First, the Complaint does not identify any "false or misleading statements."  It is readily apparent that this claim is based upon Plaintiff's deeply flawed belief that "statements of fact about Lucky's Leash and [Defendants'] entitlement to use and sell it . . . after the Contract was terminated" (Compl. ¶ 39), were "false."  However, given the plain language of Section 10 of LL Agreement (Exhibit B to the Complaint), it is unclear how such alleged statements about Tekno's "entitlement to use and sell" Lucky's Leash products is false or misleading.  Further, the Complaint is devoid of any factual allegations pertaining to (2) the fact or tendency of deception and (3) the materiality of any deception in influencing purchases.

16

Moreover, setting aside these flaws, the Complaint simply fails to attribute any false or misleading statements to Kurani.  Pointedly, the Complaint does not allege that Kurani himself made any statements, and does not even allege that any statements attributable to Tekno can or ought to be imputed to Kurani.  Thus, the Complaint fails to adequately and sufficiently that Kurani, directly or indirectly, engaged in or contributed to any acts of false advertising under the Lanham Act.

Accordingly, the Complaint fails to state any actionable claim for false advertising against Kurani and should be dismissed pursuant to Rule 12(b)(6).

## V.  CONCLUSION

Accordingly, for any or all of the reasons set forth above, this Court should dismiss the Complaint as against Defendant Jeff Kurani with prejudice pursuant to Fed. R. Civ. P. Rule 12(b)(6).